# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE W. CRUTE, | Civil Action No. 10 - 226J |
| Petitioner, | District Judge Kim R. Gibson |
| v. | Magistrate Judge Lisa Pupo Lenihan |
| MR. WELINGER, Warden, F.C.I. Loretto, | |
| Respondent. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied.

### II. REPORT

Petitioner, George W. Crute, a federal prisoner at the Federal Correctional Institution at Loretto, Pennsylvania, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 claiming that the Bureau of Prisons (BOP) violated his constitutional rights with respect to a disciplinary action resulting in the loss of good time credit. Specifically, the Petition challenges actions in connection with Incident Report No. 1975381 charging him with Stealing, Interfering with Staff in the Performance of Their Duties, and Refusing to Obey an Order. Petitioner seeks an order directing Respondent to expunge the Incident Report, restoration of his good time credit and compensation for the loss of his prison work assignment. For the reasons outlined below, the Petition should be denied because Petitioner failed to exhaust his available administrative remedies and he has failed to show any federal or constitutional violation that would provide the basis for federal habeas corpus relief.

## A. Relevant Facts

On February 5, 2010, Incident Report No. 1975381 was issued charging Petitioner with Stealing, Interfering with Staff in Performance of Duties, and Refusing to Obey an Order, in violation of Codes 219, 298, and 307, respectively (ECF No. 8-3, p. 5). The report, which was prepared by Senior Officer C. Pinizzotto, provides as follows.

> On 02/05/2010 at 07:11, Inmate Crute #08415-068 was observed carrying a garbage bag. When Inmate Crute was questioned about the bag he ran, I chased him through the dining hall, and into the parking lot behind the camp. Inmate Crute was ordered several times to stop and kept running. At the time Inmate Crute was stopped the Garbage bag was searched. The Bag contained around 30 sandwiches from the vending machine in the visiting room. Inmate Crute was restrained using hand restraints and taken to the Special Housing Unit.

On February 5, 2010, at 1:45 pm, the Incident Report was delivered to Petitioner. Upon delivery of the Incident Petitioner, Petitioner was advised of his rights during the disciplinary process and stated that he understood his rights. Petitioner then made the following statement "Yes, this is true, but I did stop at the food service door and did not run out like the officer said." At the conclusion of the investigation, the investigating Lieutenant referred the Incident Report to the Unit Discipline Committee (UDC) for an Initial Hearing.

On February 8, 2010, the UDC convened for an Initial Hearing for Incident Report No. 1975381. At the hearing, Petitioner stated, "he didn't tell me to stop until I was already out the door and had stopped." "I was only outside the door, not in the parking lot." The investigating Lieutenant noted that Petitioner displayed a poor attitude and failed to realize the significance of refusing an order and running from the officer. At the conclusion of the hearing the UDC referred the Incident Report to the Discipline Hearing Officer DHO for final disposition. Petitioner exercised his right to a staff representative and requested Recreation Specialist Bradley Cooper to

serve as his staff representative at the DHO hearing.   On that same date, Mr. Cooper was advised that he was requested to appear as Petitioner's staff representative at the DHO hearing.

On February 26, 2010, the DHO hearing was conducted.   The DHO noted that Mr. Cooper was not available to serve as Petitioner's staff representative.   Upon being informed of Mr. Cooper's unavailability, Petitioner requested Special Investigations Supervisor (SIS) Support Technician B. Yingling serve as his staff representative   Mr. Yingling was contacted and he agreed to serve as Petitioner's staff representative at the DHO hearing.   At the hearing, Petitioner denied the charges and made the following statement.

> The report is partially true. It's true I had the sandwiches.  It's true he seen me walking through the dinning (sic) hall, as I grabbed the door handle, he said something, I knew he was talking to me, but I kept going.  I stopped outside the door, but, I was not all the way in the parking lot.  That part is not true.

ECF No. 8-3, p. 14.  No witnesses were called.  At the conclusion of the hearing, the DHO determined that Petitioner committed the prohibited acts of Stealing and Refusing to Obey an Order of any Staff Member.   The specific evidence relied upon to support this finding is set forth as follows.

> Your due process rights were read and reviewed with you by the DHO at the time of your hearing.  You stated you understood your rights, and had no documentary evidence to present.  You requested the services of a staff representative, B. Cooper.  You did not request any witnesses.
>
> Based on some facts/evidence the DHO concluded the prohibited acts of stealing and refusing to obey an order of any staff member were committed.  The DHO based this decision on the following evidence:
>
> The DHO based this finding upon the reporting officer's written statement that on February 5, 2010, at approximately 7:11 a.m., Senior Officer C. Pinizzotto observed inmate Crute carrying a garbage bag.  When Officer Pinizzotto attempted to question inmate Crute about the bag, inmate Crute ran.  Officer Pinizzotto chased inmate Crute through the Dining Hall and into the parking lot behind the Camp.  Officer Pinizzotto gave inmate Crute several orders to stop but he kept running.   Inmate Crute finally stopped running and Officer Pinizzotto confiscated the garbage bag, which contained approximately 30 sandwiches from the vending machine in the Visiting Room.

> Also, the DHO considered your testimony during the DHO hearing, in which you state the incident report was partially true. You admit guilt of refusing to stop, when instructed to do by the reporting staff member in the dining hall. You also admit guilt of being in possession of the 30 sandwiches that came from the vending machine in the visiting room. You deny being in the parking lot, you allege you were only standing outside the dining hall door.
>
> Also, the DHO considered the character reference testimony provided by your staff representative, Mr. Yingling SIS Technician. Mr. Yingling indicated your actions described in the incident report, were out of character from you[r] previously observed behavior. Mr. Yingling indicated he has previously observed you being a model inmate, not getting in any trouble, and attempting [to] counsel younger inmates on not breaking the rules.
>
> Also, the DHO considered the photograph depicting approximately 30 sandwiches; you took from the vending machine in the Visiting Room, on February 5, 2010, at approximately 7:11 a.m.
>
> Based on some facts/evidence, the DHO found you committed the prohibited Stealing, Code 219, and Refusing to obey an order of any staff member, Code 307.

ECF No. 8-3, p. 15. The DHO imposed the following sanctions: 30 days disciplinary segregation (DS); 15 days suspended pending 180 days clear conduct; disallow 15 days good conduct time (GCT); and 180 days loss of commissary privileges. On or about March 16, 2010, the DHO report dated March 12, 2010 was delivered to Petitioner.

On April 2, 2010, Petitioner appealed the DHO Report to the Bureau of Prisons (BOP) Northeast Regional Office  In his appeal, he argued that the sandwiches were removed from the garbage can in the Visiting Room, and thus, were not stolen. He explained that when the vending machines were restocked, the expired food was placed in the garbage can. Petitioner complained that the DHO failed to enter this information in the DHO report. Petitioner also argued that because the vending machines were filled at the time he was stopped with the sandwiches, they could not have been stolen from the machines. In a Response dated April 30, 2010, the Regional Office denied Petitioner's appeal. It was explained that "stealing" is committed "when an inmate appropriates the property of another without permission or right."

In this case, Petitioner did not have permission to take the sandwiches, even if Petitioner found them in the trash. On May 24, 2010, Petitioner appealed the Regional Office's response to the BOP's Office of General Counsel.

Over three months after the response period had expired, the Office of General Counsel directed the DHO to reconsider its decision based on the evidence presented at the DHO hearing. Thereafter, on December 1, 2010, the DHO reconsidered its decision, and issued an amended DHO report (ECF No. 14-1, pp. 7-9). Specifically, on reconsideration, the DHO determined that Petitioner violated Code 305 (Possessing Anything Not Authorized) and Code 307 (Refusing to Obey an Order) and expunged the Code 219 (Stealing) violation from Petitioner's disciplinary record. The specific evidence relied upon to support this finding is set forth as follows.

> Your due process rights were read and reviewed with you by the DHO at the time of your hearing. You stated you understood your rights, and had no documentary evidence to present. You requested the services of a staff representative, B. Cooper. Mr. Cooper was out of the institution, and you selected Mr. Yingling, SIS Technician, who appeared at the DHO hearing. You did not request any witnesses.
>
> Based on some facts/evidence the DHO concluded the prohibited acts of possession of anything not authorized, and refusing to obey an order of any staff member were committed. The DHO based this decision on the following evidence:
>
> The DHO based this finding upon the reporting officer's written statement that on February 5, 2010, at approximately 7:11 a.m., Senior Officer C. Pinizzotto observed inmate Crute carrying a garbage bag. When Officer Pinizzotto attempted to question inmate Crute about the bag, inmate Crute ran. Officer Pinizzotto chased inmate Crute through the Dining Hall and into the parking lot behind the Camp. Officer Pinizzotto gave inmate Crute several orders to stop but he kept running. Inmate Crute finally stopped running and Officer Pinizzotto confiscated the garbage bag, which contained approximately 30 sandwiches from the vending machine in the Visiting Room.
>
> Also, the DHO considered your testimony during the DHO hearing, in which you state the incident report was partially true. You admit guilt of refusing to stop, when instructed to do by the reporting staff member in the dining hall. You also admit guilt of being in possession of the 30 sandwiches that came from the vending machine in the visiting room. You deny being in the parking lot, you allege you were only standing outside the dining hall door.

> Also, the DHO considered the character reference testimony provided by your staff representative, Mr. Yingling SIS Technician. Mr. Yingling indicated your actions described in the incident report, were out of character from you[r] previously observed behavior. Mr. Yingling indicated he has previously observed you being a model inmate, not getting in any trouble, and attempting [to] counsel younger inmates on not breaking the rules.
>
> Also, the DHO considered the photograph depicting approximately 30 sandwiches, you took from the vending machine in the Visiting Room, on February 5, 2010, at approximately 7:11 a.m.
>
> Based on some facts/evidence, the DHO found you committed the prohibited Possession of anything not authorized, Code 305, and Refusing to obey an order of any staff member, Code 307.

ECF No. 8-3, p. 15. The DHO imposed the following sanctions: 30 days (DS); 13 days GCT; and 180 days loss of commissary privileges.

On December 16, 2010, the Amended DHO Report was delivered to Petitioner at FCI Loretto. On that same date, the Office of General Counsel denied Petitioner's Central Office Administration Remedy Appeal as moot due to the DHO's reconsideration of the Incident Report. The Central Office's Response advised Petitioner that he could appeal the DHO's reconsideration by filing a Regional Administrative Remedy Appeal (ECF No. 8-1, p. 14).

On December 30, 2010, Petitioner filed a Regional Administrative Remedy Appeal challenging the DHO's reconsideration. Petitioner's Regional Appeal was denied in a Response dated January 28, 2011 (ECF No. 14-1, p. 13). The Response advised Petitioner that he could appeal to the Central Office by filing an appeal within 30 days. On February 14, 2011, Petitioner appealed the Regional Office's Response to the BOP Office of General Counsel; however, his appeal was rejected because he failed to enclose required documentation. Petitioner was given 15 days to correct the errors cited and to re-submit his Central Office Appeal. Petitioner has not submitted any evidence to show that he re-submitted his Central Office Appeal in accordance with the applicable regulations.

## A. Exhaustion

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his or her claim to federal court. United States v. Wilson, 503 U.S. 329, 334-335 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); United States v. Keller, 58 F.3d 884 (2d Cir. 1995); United States v. Brann, 990 F.2d 98, 104 (3d Cir. 1993). Federal courts developed the exhaustion doctrine for several reasons: 1) to facilitate judicial review by allowing the appropriate agency to develop a factual record and apply its expertise; 2) to conserve judicial time and costs because the agency might grant the relief sought; and 3) administrative autonomy requires that an agency be given an opportunity to correct its own errors. McKart v. United States, 395 U.S. 185, 194 (1969); United States ex rel. D'Agostino v. Keohane, 877 F.2d 1167, 1173-74 (3d Cir. 1989); Arias v. United States Parole Commission, 648 F.2d 196, 199 (3d Cir. 1981).

Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action. Fuller v. Rich, 11 F.3d 61 (5th Cir. 1994); Fraley v. U.S. Bureau of Prisons, 1 F.3d 924 (9th Cir. 1993). These exceptions apply, however, only in "extraordinary circumstances" and a petitioner bears the burden of demonstrating the futility of administrative review. *Id*. "The forum with the primary jurisdiction does not simply provide a preliminary determination, but a final one, and the grant of a habeas writ is intended to be the exception, not the rule." Sanchez v. Miller, 792 F.2d 694, 698 (7th Cir. 1986), *cert. denied*, 479 U.S. 1056 (1987). Circumvention of the administrative process diminishes the effectiveness of the agency by encouraging prisoners to ignore its procedures. McKart, 395 U.S. at 195. The petitioner has the burden of establishing that exhaustion has been met. Gonce v. Redman, 780 F.2d 333, 336 (3d Cir. 1985); Brown v.

Cuyler, 669 F.2d 155, 158 (3d Cir. 1982); Harper v. Mazuriewicz, 849 F. Supp. 377, 379 (E.D. Pa. 1994).

Federal prisoners challenging BOP determinations must avail themselves of the Administrative Remedy Program (ARP) as codified in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. First, inmates must attempt to informally resolve the issue before filing a request for administrative remedy. 28 C.F.R. § 542.l3 (a). Second, if an inmate is unable to informally resolve his complaint, he may file a formal written complaint (form B-9), within 20 calendar days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.l4 (a). The inmate must date and sign the request and submit it to the institution staff member designated to receive such requests (ordinarily a correctional counselor). 28 C.F.R. § 542.l4(c) (4). The warden has 20 calendar days in which to respond. 28 C.F.R. § 542.18. If an inmate is not satisfied with the warden's response, he may submit an appeal on form B-10 to the Regional Director within 20 calendar days from the date of the warden's response. 28 C.F.R. § 542.15(a). The Regional Director has 30 calendar days in which to respond. 28 C.F.R. § 542.18. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may be appealed to the General Counsel within 30 calendar days from the date of the Regional Director's response. 28 C.F.R. § 542.15(a). The General Counsel has 40 calendar days to respond. 28 C.F.R. § 542.18.

### B. Procedural Default

In Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir.1996), the United States Court of Appeals for the Third Circuit determined that the failure to follow the procedures set forth in the BOP's administrative remedy program constitutes a procedural default. Specifically, the Court held that if a prisoner has failed to exhaust administrative remedies due to a procedural default and the default renders unavailable the administrative process, review of his

habeas claim is barred unless he can demonstrate cause for the failure to comply with the procedural requirement and actual prejudice resulting from the alleged constitutional violation. The "cause" standard requires a petitioner to show that some external objective factor impeded his or her efforts to comply with the procedural bar. *See* Murray v. Carrier, 477 U.S. 478, 488 (1986). Cause can be established by showing that the factual or legal basis for a claim was not reasonably available or that government interference made compliance with the procedural rule impracticable.

In this case, Petitioner has not met that burden. Specifically, he has failed to demonstrate that some objective factor prevented him from resubmitting his appeal to the Central Office with the proper attachments. Thus, because Petitioner failed to follow the proper procedure, he has failed to comply with the exhaustion requirement, which results in procedural default of his claims. *Accord* Razzoli v. FCI Allenwood, Civil No. 3:04-2495, 2006 WL 89215, 7 (M.D. Pa. Jan. 11, 2006) (failure to perfect appeal to Central Office resulted in procedural default).

Notwithstanding, under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Thus, in the alternative, under this provision, the Court will review his claim.

### C. Availability of Federal Habeas Corpus Relief

A prisoner may be granted federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Petitioner's habeas petition does not state a cognizable basis for federal habeas corpus relief because it fails to assert any federal or constitutional violation associated with BOP's actions in revoking his GTC or in imposing the other disciplinary sanctions. Petitioner claims that his due process rights were violated with

regard to his disciplinary proceedings. Contrary to his assertions; however, the record reveals that Petitioner received all of the process to which he was entitled.

In this regard, due process is a flexible concept; the means of providing a meaningful opportunity to be heard depending upon the particular circumstances of each situation. Hewitt v. Helms, 459 U.S. 460, 471 (1983); Greenholtz, 442 U.S. at 12; Morrissey v. Brewer, 408 U.S. 471, 481 (1972). An inmate may not be deprived of a liberty interest unless the inmate receives: 1) written notice of the hearing at least 24 hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 556, 563 (1974) (noting that prison disciplinary proceedings are not part of a criminal prosecution and, therefore, the full panoply of rights due a defendant in such proceedings do not apply).

Petitioner received all of the process to which he was entitled. He was given a copy of the Incident Report well in advance of the UDC hearing. The UDC committee referred the Incident Report to the DHO for further hearings. Petitioner received a DHO hearing where he was given the opportunity to call witnesses and present evidence in his defense. The DHO found Petitioner guilty of the charges and his findings are documented in the written report, which sets forth the evidence relied on and the reasons for the disciplinary actions. Thus, BOP complied with all of the due process requirements outlined in Wolff.

The appropriate standard for federal court review of a prison disciplinary decision implicating a prisoner's liberty interest is that there be "some evidence" in the record to support the determination. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985). This standard is met if there is some evidence from which the conclusion of the administrative tribunal could be deduced. Id.

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. . . . The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have **some** basis in fact.

Hill, 472 U.S. at 455-56 (internal quotations and citations omitted).

Hill makes manifest that the balance of interests in prison disciplinary cases leads to minimal scrutiny of prison decisions by the federal courts. In the case at bar, the bases for the DHO's conclusions are set forth in his report. A federal court does not sit as a trial *de novo* with regard to prison disciplinary proceedings. Rather, it sits to determine whether there were constitutional errors in those proceedings. It was the function of the DHO, as the factfinder, to make credibility determinations and weigh the evidence presented. As Petitioner admitted to the violation, it is clear from the record that Petitioner cannot demonstrate that he suffered any due process violations with respect to his disciplinary hearings and the sanctions he received as a consequence.[1] Accordingly, this Court must not interfere with BOP's decisions in this regard.

Petitioner also alleges that his due process rights were violated because the DHO reconsidered its decision without a rehearing. This argument also is without merit because BOP disciplinary regulations permit corrective action without a rehearing. *See* 28 C.F.R. §

---

[1] Moreover, Petitioner's assertion that he was denied due process because the DHO credited the statement of the reporting officer clearly is without merit. *See, e.g.*, Hill, 472 U.S. at 456 (evidence in the form of testimony from prison guard and copies of written report sufficient to meet due process requirements).

541.19. Thus, in this regard, Petitioner fails to assert a violation of federal law much less a violation of due process.

Upon remand, the DHO reconsidered the evidence and reduced the charge of Stealing to Possession of Anything not Authorized. This violation is supported by the written statement of the reporting staff member indicating that Petitioner was observed carrying a garbage bag containing approximately 30 sandwiches as well as Petitioner's admission that he possessed the 30 sandwiches. As Petitioner was not authorized to possess the sandwiches, there is sufficient evidence to support the violation.

### III. CONCLUSION

Petitioner has failed to properly exhaust his administrative remedies and has failed to demonstrate that the exhaustion requirement should be excused. Moreover, Petitioner has not demonstrated that he suffered any constitutional violation or violation of federal law with respect to his disciplinary action and the revocation of good-time credit. Accordingly, for the reasons stated above, it is respectfully recommended that the Petition be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: August 5, 2011

                                              Lisa Pupo Lenihan
                                              U.S. Magistrate Judge

George W. Crute 08415-068
FCI Loretto
P.O. Box 1000
Loretto, PA 15940